JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JANE DOE,<br><br>            Plaintiff,<br><br>     v.<br><br>HOAG MEMORIAL PRESBYTERIAN HOSPITAL,<br><br>            Defendant. | Case No.: SACV 23-00444-CJC (ADSx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [Dkt. 12]** |

**I.   INTRODUCTION**

On January 13, 2023, Plaintiff Jane Doe filed a putative class action in the Superior Court of California, County of Orange against Defendant Hoag Memorial Presbyterian Hospital, alleging that Defendant's online practices effectuate various invasions of

-1-

privacy.  (*See* Dkt. 1-1 [Exhibit A to Notice of Removal, hereinafter "Compl."].)  Defendant removed the case to this Court on March 10, 2023, pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  (*See* Dkt. 1 [Notice of Removal, hereinafter "NOR"] ¶ 10.)  Now before the Court is Plaintiff's motion to remand the case.  (*See* Dkt. 12 [Notice of Motion and Motion to Remand Case, hereinafter "Mot."].)  For the following reasons, Plaintiff's motion is **GRANTED**.[1]

## II.   BACKGROUND

According to Defendant, it uses a tool provided by Facebook called Meta Pixel as a component of its "website analytics practices" to "drive patients to the [Defendant's] websites and to the patient portal."  (NOR ¶ 45.)  Defendant asserts that the federal government, through the "Meaningful Use" program, has "incentivized and directed providers who participate in the Medicare and Medicaid program (like [Defendant]) to offer patients online access to their [health] records, and to optimize patient engagement with their medical information."  (*Id.* ¶ 12; *see also id.* ¶ 23 [citing 42 C.F.R. §§ 495.2(f)(12)(i)(B)].)  As part of that program, the federal government gives incentive payments to healthcare providers who promote patient engagement through the "meaningful use of certified [electronic health record] technology."  42 U.S.C. §§ 1395w-4(o), 1395ww(n); *see also* 42 C.F.R. §§ 495.20–495.24.  The federal government also provided guidance about how private providers could optimize their online health portals, and offered a model for providers to follow that used third-party marketers like Facebook to increase engagement.  (*See* NOR ¶ 30.)

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for May 8, 2023, at 1:30 p.m. is hereby vacated and off calendar.

Plaintiff alleges that "[s]ince at least 2020, Defendant has disclosed information about prospective and actual patients . . . to Facebook and other third parties without [the patients'] knowledge, authorization, or consent." (Compl. ¶ 3.) Specifically, she asserts that "Defendant discloses . . . protected health information through the deployment of various digital marketing and automatic rerouting tools embedded on its websites that purposefully and intentionally redirect Personal Health Information to Facebook, which exploits that information for advertising purposes." (*Id.* ¶ 4.) This is accomplished using the Meta Pixel tool, which Plaintiff alleges is installed on "almost every page" of Defendant's website. (*Id.* ¶ 16.) As a result, "[e]ach time" Plaintiff or any other putative class member entered a search term on Defendant's website, "Meta Pixel recorded the information she entered and transmitted it to Facebook, along with identifying information that let Facebook know exactly who [Plaintiff] was." (*Id.*)

## III.  LEGAL STANDARD

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotations omitted). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. *See* 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. *See id.* § 1447(c). "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999). Accordingly, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

A defendant may remove an action to federal court when it is brought against the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1); *see also Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 145 (2007). Federal officer removal is available under Section 1442(a) if "(a) [the removing party] is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018). The statute "responds to three general concerns: (1) 'State-court proceedings may reflect "local prejudice" against unpopular federal laws or federal officials'; (2) 'States hostile to the Federal Government may impede' federal law; and (3) 'States may deprive federal officials of a federal forum in which to assert federal immunity defenses.'" *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018) (quoting *Watson*, 551 U.S. at 150). Section 1442 is liberally construed to address these issues, but is not limitless in scope. *See id.* (citing *Watson*, 551 U.S. at 147); *see also Geisse v. Bayer HealthCare Pharms. Inc.*, 2019 WL 1239854, at *4 (N.D. Cal. Mar. 18, 2019).

### IV. DISCUSSION[2]

Defendant asserts that it is entitled to be treated like a federal officer because in helping the federal government "develop a nationwide infrastructure for health information technology," it "acted within the penumbra of federal action and office." (NOR ¶¶ 12, 13.) Plaintiff responds that "providing patient records is a private function,

---

[2] As a preliminary matter, Defendant has requested that the Court take judicial notice of various public government documents relating to the Meaningful Use Program, such as the Office of the National Coordinator for Health Information Technology's 2011-2015 Federal Health Information Technology Strategic Plan. (*See* Dkt. 14 [Request for Judicial Notice].) The Court will grant Defendant's request. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (noting that a court may take judicial notice of undisputed matters of public record).

not a governmental task, and mere regulation or incentives through the Meaningful Use Program cannot turn a private hospital into an entity 'acting under' a federal officer." (Mot. at 10.)

For 28 U.S.C. § 1442(a) to apply, Defendant must establish that while "acting under" the direction of a federal officer, it engaged in conduct that had a causal connection to Plaintiff's claims. *See* 28 U.S.C. § 1442(a)(1); *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006). The Supreme Court has stated that the phrase "acting under" refers to "an effort to assist, or to help carry out, the duties or tasks of the federal superior," and describes "a relationship typically involv[ing] subjection, guidance, or control." *Watson*, 551 U.S. at 151–52. The Ninth Circuit has identified several factors relevant to assessing whether a private entity was acting under a federal officer's directions, including whether the entity (1) "is acting on behalf of the officer in a manner akin to an agency relationship," (2) "is subject to the officer's close direction," (3) "is assisting the federal officer in fulfilling basic governmental tasks that the Government itself would have had to perform if it had not contracted with a private firm," and (4) is engaged in "activity [that] is so closely related to the government's implementation of its federal duties that the private person faces a significant risk of state-court prejudice, just as a government employee would in similar circumstances." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 756–57 (9th Cir. 2022) (internal quotations and citations omitted).

Defendant has not shown that it acted under the direction of a federal officer or agency. Defendant relies on the fact that "[t]he federal government is incentivizing, regulating, monitoring, and supervising [Defendant's] actions in the Meaningful Use program in order to meet the federal government's national priority of interoperable health information technology." (NOR ¶ 37.) It argues that "in the absence of [its] actions . . . the federal government would be left alone to complete its mission," (*id.*

¶ 39), and that "[c]ourts within the Ninth Circuit have regularly accepted cases removed under the federal officer removal statute in circumstances where, like here, the entity 'assist[ed]' or 'help[ed] carry out' the tasks of the federal government," (Opp. at 18 [citation omitted]).  But the cases Defendant cites in support of that proposition, (*see id.*), involved situations in which a private party was contracted to carry out a function that the federal government would otherwise be obligated to do itself, such as administering Medicare benefits or administering a health benefits plan for federal employees.  That is not the situation here.  If hospitals did not digitize their patient records, the federal government would be under no obligation to carry out the task itself.  In other words, "[d]espite the federal government's expressed desire to encourage 'the implementation of interoperable health information technology infrastructure,' [the Meaningful Use program] neither authorizes nor obligates the federal government to create such an infrastructure itself."  *Doe, I v. BJC Health Sys.*, 2023 WL 369427, at *4 (E.D. Mo. Jan. 10, 2023); *see also id.* ("[I]t cannot be said that [the defendant's] creation of a website and online patient portal fulfills a 'basic government task' that the federal government itself would otherwise be required to carry out.").

Furthermore, mere compliance with federal regulations, "even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored," does not fall within the scope of Section 1442(a).  *Watson*, 551 U.S. at 153.  Thus, while the Meaningful Use program may subject private entities like Defendant to some degree of government control, "'simply complying' with a law or regulation is not enough to 'bring a private person within the scope of the statute.'"  *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 684 (9th Cir. 2022) (citation omitted); *see also Jalili-Farshchi v. Aldersly,* 2021 WL 6133168, at *4 (N.D. Cal. Dec. 29, 2021).

Indeed, multiple other courts in this circuit have rejected arguments identical to those made here and held that compliance with the Meaningful Use program is

insufficient to support federal officer removal. *See, e.g.*, *Quinto v. Regents of Univ. of California*, 2023 WL 1448050, at *2 (N.D. Cal. Feb. 1, 2023) (rejecting federal officer removal when the defendant hospital argued that it "use[d] the Facebook Tracking Pixel as part of its broader effort to assist the federal government in achieving its 'mission of a nationwide digitized healthcare system'" (citation omitted)); *Heard v. Torrance Mem'l Med. Ctr.*, 2023 WL 2475544, at *2 (C.D. Cal. Mar. 13, 2023) (rejecting federal officer removal when the defendant argued that "the federal government incentivizes, regulates, monitors, and supervises [the defendant's] actions as part of the [Meaningful Use Program] 'in order to meet the government's national priority of interoperable health information technology,' and [the defendant] is helping the government produce the 'nationwide, interoperable information technology infrastructure for health information'" (citation omitted)); *Crouch v. Saint Agnes Med. Ctr.*, 2023 WL 3007408, at *4 (E.D. Cal. Apr. 19, 2023) (same).

Defendant argues that these cases failed to properly consider the fact that as a participant in the Meaningful Use program, "it is not merely subject to a regulatory scheme, but rather has been paid incentive benefits by the federal government to fulfill the government's own mission of developing a nationwide electronic health records system." (Opp. at 19.) But both *Quinto* and *Crouch* considered that fact and determined that "receiving incentive payments for acting in a way that promotes a broad federal interest . . . is not the same as being contracted to carry out, or assist with, a basic governmental duty." *Quinto*, 2023 WL 1448050, at *2; *see also Crouch*, 2023 WL 3007408, at *5. The Court agrees with their reasoning.

In short, Defendant has established only that it is subject to "highly detailed" regulations and that its "activities are highly supervised and monitored." *See Watson*, 551 U.S. at 152. That is not sufficient to invoke federal officer removal.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is **GRANTED**. This action is hereby **REMANDED** back to the Superior Court of the State of California, County of Orange.

DATED: May 2, 2023

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE